TOLU Tolu, Appellant,

v.

Muriel AYODEJI, et al., Appellees.

No. 06–CV–193.

District of Columbia Court of Appeals.

Submitted May 8, 2007.
Decided March 20, 2008.

Tolu Tolu, pro se.

Robert K. Epstein, was on the brief, for appellee.

Before REID and BLACKBURNE-RIGSBY, Associate Judges, and BELSON, Senior Judge.

PER CURIAM:

Appellant, Tolu Tolu, appeals the trial court's order granting summary judgment in favor of appellees in her personal injury/negligence lawsuit. We conclude that on this record summary judgment was improper because there are genuine issues of material fact in dispute. Therefore, we reverse the trial court's judgment and remand this case for further proceedings.

## FACTUAL SUMMARY

The record shows that, on January 9, 2004, appellant, Tolu Tolu, a resident of 1375 Florida Avenue, in the Northeast quadrant of the District of Columbia ("1375"), filed a complaint alleging that appellees, Muriel Ayodeji, her husband, Francis Ayodeji, and her husband's real estate corporation, New Concept Realty Services Inc. ("New Concept"), commenced "total renovation" of the neighboring attached row house at 1377 Florida Avenue ("1377"), including construction of an addition to the house. Ms. Tolu made the following allegations in her complaint. Appellees failed to obtain required inspections or permits from the District of Columbia government, and did not take precautions to protect her person and property by erecting a barrier, fence, or warning sign. She complained to appellees' "workers" about the presence of construction debris on her property, specifically about the workers throwing debris from 1377 onto her property, and about their lack of compliance with construction regulations. On February 2, 2001, upon returning home at 5:30 p.m., she tripped and fell over construction debris, "most probably a combination of trash, studs, and dry wall materials thrown by the defendant into the plaintiff's back yard." When Ms. Tolu grabbed her fence to break the fall, the fence, allegedly weakened by appellees' construction, collapsed. She claimed that appellees' "illegal, not licensed and negligent actions (specifically throwing debris),

are the sole cause of the plaintiff's trip and fall accident." Ms. Tolu fractured her foot during her fall, and required surgery. She requested compensatory, consequential, and punitive damages. In an answer filed January 23, 2004, appellees denied Ms. Tolu's allegations and denied liability for her fractured foot.

During her deposition on April 13, 2005, Ms. Tolu testified that she employed a man named Rios to do odd jobs, including keeping her front and back yard clean of papers and trash. On the day of her injury, Ms. Tolu and Mr. Rios took appellant's car out "for a spin." When they returned, they were walking through the back yard, which Ms. Tolu kept "meticulous," when she tripped over an "item" while trying to avoid a piece of construction material. Between three and five "contractors" or "workmen" at 1377 came to the fence while she was on the ground. Appellees hired Mr. Rios "some weeks" after Ms. Tolu's fall to work on their "rehab" at 1377.

During his deposition on April 13, 2005, Mr. Ayodeji stated that there was no new construction at 1377, only "like painting and minor, minor work." Mr. Ayodeji had only one contractor, a man named Rio or Mr. Rio, who worked for him painting and carpeting.[1] He had "no need for a foreman" because he was there himself. When asked for the names of tradesmen or contractors who performed work at 1377, Mr. Ayodeji alternately replied, "[t]hat would be me" and "the name of the contractor was Rio." He did not recall whether he applied for or obtained a permit for work on 1377.

Ms. Ayodeji also gave a deposition on April 13, 2005. She testified that she was the only party on the deed to 1377. When asked when she purchased the house, she replied, in part, "I don't remember.... My husband is in charge of it." She added, "My husband was the one who's doing some things in the house, so I did not know rehab in the house. I'm not involved."

On December 20, 2005, after close of discovery, appellees moved for summary judgment, alleging that Ms. Tolu failed to prove the elements of duty and causation with respect to her negligence claim. They stated that the following material facts were undisputed: 1) Mr. Ayodeji and New Concept had no ownership interest in the property at 1377; 2) there were no witnesses to the alleged accident; 3) construction work was occurring on Ms. Tolu's property at the time of her injury; and 4) Ms. Tolu's employee, Mr. Rios, was charged with keeping her property free of debris. Appellees supported their motion with several documents, including 1) an affidavit by Mr. Ayodeji denying that he and New Concept had any ownership interest in 1377; 2) an affidavit by Ms. Ayodeji indicating that she is the sole owner of 1377; and 3) excerpts from Ms. Tolu's deposition testimony of April 13, 2005.

Ms. Tolu filed an opposition to appellees' motion for summary judgment. She disputed appellees' above-stated facts and submitted several documents in support of her opposition, including: 1) excerpts from Mr. Ayodeji's deposition; 2) excerpts from her own deposition; and 3) photographs of alleged construction debris in the backyard at 1377.

On January 24, 2006, the trial court granted appellees' motion for summary judgment. The court concluded that Ms. Tolu failed to establish that appellees owed her a duty because she "[did] not place any of the [appellees] on the property on Feb-

---

1. Mr. Javier Rios appears in the record as Mr. Rio, Rio, Mr. Rios and Rios. The parties acknowledge that they are referring to the same person.

ruary 2, 2001, nor did she witness or provide any evidence of actions that could constitute negligence." The trial court found "no dispute that contractors were hired to do work on the property and that 'Rio' were the contractors." The court determined that Ms. Tolu provided "no proof that any of the [appellees] actually performed any of the work themselves, or that the contractor was an employee of the [appellees]." Because someone other than the appellees, such as their "contractors," may have been responsible for the debris, the court decided that Ms. Tolu failed to prove a duty of care, and hence, did not establish a *prima facie* case of negligence.

Ms. Tolu filed a Notice of Appeal on February 14, 2006.

## ANALYSIS

Ms. Tolu contends that the trial court erred in granting summary judgment in favor of appellees on her complaint. She argues on appeal, as she did in the trial court, that appellees exercised control over 1377 and the construction work performed there, and that appellees, acting individually or through their employees, had a duty of care arising from (1) a statutory duty to protect adjoining property during construction, pursuant to 12A DCMR § 3310.1 (2001); and (2) a duty of reasonable care to persons on adjacent property while performing construction activities. She asserts that appellees breached their duty of care by failing to control the construction debris that landed in her yard, and that she would not have tripped and fractured her ankle if appellees had not caused debris to appear in her yard and weakened her fence with their construction activity.

Appellees contend that Ms. Tolu failed to put forth sufficient evidence to support her claim against summary judgment. They maintain that Ms. Tolu did not establish that they owed her a duty of care to protect against a fall that occurred on her own property. They assert that Ms. Tolu's fall occurred in an area controlled by her and her employee; she was engaged in her own construction activity; and there were no witnesses to her fall. They also argue that Mr. Ayodeji and New Concept are not liable for any purported negligence arising from construction activities at 1377 because they did not own the property.

 Summary judgment is appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Super. Ct. Civ. R. 56(c); *Lowrey v. Glassman*, 908 A.2d 30, 35–36 (D.C.2006); *Weakley v. Burnham Corp.*, 871 A.2d 1167, 1173 (D.C.2005). The moving party has the initial burden of demonstrating that there is no genuine issue of material fact and that he or she is entitled to judgment as a matter of law. *Murphy v. Schwankhaus*, 924 A.2d 988, 991 (D.C.2007); *Beard v. Goodyear Tire & Rubber Co.*, 587 A.2d 195, 198 (D.C.1991). The moving party may meet its burden by showing an absence of evidence supporting plaintiff's claim. *Murphy, supra*, 924 A.2d at 991; *Beard, supra*, 587 A.2d at 198 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the non-moving party to present evidence showing the existence of genuine issues of material fact. *Murphy, supra*, 924 A.2d at 991; *Beard, supra*, 587 A.2d at 198. The non-moving party may not rest upon conclusory allegations or denials, but must provide affidavits, depositions, or answers to interrogatories that "set forth specific facts showing that there is a genuine issue for trial." Super. Ct. Civ. R. 56(e); *Beard, supra*, 587 A.2d at 198–99.

■ "On appeal, this court reviews summary judgment *de novo*, conducting an independent review of the record and applying the same substantive standard used by the trial court." *Murphy, supra*, 924 A.2d at 991; *see also Weakley, supra*, 871 A.2d at 1173. We determine the existence of any genuine issue of material fact by reviewing the pleadings, depositions, admissions and any affidavits on file. *Graff v. Malawer*, 592 A.2d 1038, 1040 (D.C. 1991); *Holland v. Hannan*, 456 A.2d 807, 815 (D.C.1983). We view the record in the light most favorable to the non-moving party. *Murphy, supra*, 924 A.2d at 991; *Weakley, supra*, 871 A.2d at 1173. The party opposing summary judgment "is entitled to all favorable inferences which may reasonably be drawn from the evidentiary materials." *Beard, supra*, 587 A.2d at 198; *see also Holland, supra*, 456 A.2d at 815. "On summary judgment, the court does not make credibility determinations or weigh the evidence." *Weakley, supra*, 871 A.2d at 1173 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)); *accord Holland, supra*, 456 A.2d at 814–15. Rather, the court reviews the record to see if it "demonstrates that there is no genuine issue of material fact on which a jury could find for the non-moving party." *Holland, supra*, 456 A.2d at 815. Thus, "if an impartial trier of fact, crediting the non-moving party's evidence, and viewing the record in the light most favorable to the non-moving party, may reasonably find in favor of that party, then the motion for summary judgment must be denied." *Weakley, supra*, 871 A.2d at 1173.

■ In order to prove liability for negligence, a plaintiff must show that "(1) the defendant owed a duty of care to the plaintiff, (2) the defendant breached that duty, and (3) the breach of duty proximately caused damage to the plaintiff."

*Haynesworth v. D.H. Stevens Co.*, 645 A.2d 1095, 1098 (D.C.1994) (citing *Powell v. District of Columbia*, 634 A.2d 403, 406 (D.C.1993); *Levy v. Schnabel Found. Co.*, 584 A.2d 1251, 1255 (D.C.1991)). A plaintiff can defeat a defendant's motion for summary judgment if a reasonable inference may be drawn from evidence, properly proffered, that the alleged injury would not have occurred but for the defendant's negligence. *See Thompson v. Shoe World, Inc.*, 569 A.2d 187, 190–91 (D.C.1990).

■ "[T]he question of whether a defendant owes a duty to a plaintiff under a particular set of circumstances is entirely a question of law that must be determined only by the court." *District of Columbia v. Shannon*, 696 A.2d 1359, 1365 (D.C. 1997) (quoting *Croce v. Hall*, 657 A.2d 307, 310 (D.C.1995)) (internal quotation marks omitted). If the applicable standard of care is not known by the average juror— *i.e.*, if the subject dealt with is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average lay juror—then expert testimony is required in order for a plaintiff to meet this burden. *National R.R. Passenger Corp. v. McDavitt*, 804 A.2d 275, 285 (D.C. 2002); *see also Hill v. Metropolitan African Methodist Episcopal Church*, 779 A.2d 906, 908 (D.C.2001). However, where a plaintiff alleges negligent conduct in a "context which is within the realm of common knowledge and everyday experience, the plaintiff is not required to adduce expert testimony either to establish the applicable standard of care or to prove that the defendant failed to adhere to it." *Varner v. District of Columbia*, 891 A.2d 260, 265 (D.C.2006) (quoting *Beard, supra*, 587 A.2d at 200) (internal quotation marks omitted); *see also District of Columbia v. Shannon*, 696 A.2d 1359, 1365 (D.C.1997).

■ "In order to succeed under a respondeat superior theory of liability, ap-

pellant must show that a master-servant relationship existed [between appellees and their workers or contractors], and that the incident at issue occurred while the [workers or contractors were] acting within the scope of [their] employment." *Giles v. Shell Oil Corp.,* 487 A.2d 610, 611 (D.C. 1985). "The decisive test ... is whether the employer has the right to control and direct the servant in the performance of his work and the manner in which the work is to be done." *Safeway Stores, Inc. v. Kelly,* 448 A.2d 856, 860 (D.C.1982) (listing factors to be considered) (quoting *LeGrand v. Insurance Co. of North America,* 241 A.2d 734, 735 (D.C.1968) (quoting *Dovell v. Arundel Supply Corp.,* 124 U.S.App. D.C. 89, 90, 361 F.2d 543, 544 (1966), *cert. denied,* 385 U.S. 841, 87 S.Ct. 93, 17 L.Ed.2d 74 (1966)); *see also Giles, supra,* 487 A.2d at 612 (the existence of the master-servant relationship turns on the right to control day-to-day operations and to terminate employment). "In characterizing the right to control as the determinative factor, we mean the right to control an employee in the performance of a task and in its result, and not the actual exercise of control or supervision." *Safeway, supra,* 448 A.2d at 860-61.

■ Ms. Tolu challenges the trial court's finding that there was "no dispute that contractors were hired to do the work on the property and that 'Rio' were the contractors" and its conclusion that Ms. Tolu presented "no proof that ... the contractor was an employee of the defendants."[2] Ms. Tolu contends that a material factual dispute exists concerning the number of workers at 1377 and appellees' degree of control over them.

On this record we conclude that summary judgment was improper because genuine issues of material fact existed, as

demonstrated by the deposition excerpts and the photographs filed with appellant's opposition to appellee's motion for summary judgment. *See Murphy, supra,* 924 A.2d at 991; *Beard, supra,* 587 A.2d at 198–99. A factual issue existed as to whether there was any construction or rehabilitation work in progress at 1377, and if so, whether Mr. Ayodeji or New Concept had any role in that work, and whether appellees had the right to control any workers or contractors who performed work at 1377. Ms. Ayodeji testified that she was the only person on the title to the property, but that her husband was the one "doing things on the house, so I did not know rehab in the house. I'm not involved.... My husband is in charge of it." Mr. Ayodeji testified that he did not need a foreman because he was there himself. However, when asked for the names of contractors who performed work at 1377, Mr. Ayodeji responded, "[t]hat would be me" and "the name of the contractor was Rio." Mr. Ayodeji also testified that he used only one contractor, Mr. Rios, and he performed only "minor work" like painting and carpeting at 1377. Ms. Tolu asserted during her deposition that Mr. Rios worked for her on the day of her fall, and that appellees hired him "some weeks" after her accident. She claimed that appellees employed workers to undertake a substantial renovation of 1377. Ms. Tolu claimed that she had previously asked Mr. Rios to complain to the workmen at 1377 about throwing construction debris onto her property. Ms. Tolu testified that immediately after her fall, between three and five "workmen" came over to her from 1377 and that Mr. Rios was also present. Although Ms. Tolu could not name the men she alleges worked at 1377 on the day of her fall, and even though she could not

2. The trial court stated, in a footnote, that "[p]laintiff may have a cause of action against the contractors who she alleges may have placed debris on the property."

locate Mr. Rios,[3] she did reference Mr. Ayodeji's testimony that he did not use a foreman because he was there himself. In addition, in her opposition to appellees' motion for summary judgment, she identified two witnesses, Derrick Robinson and Joe Rankin, who allegedly had performed work for appellees on 1377. In short, Ms. Tolu set forth evidence raising the existence of a genuine issue of material fact as to construction or rehabilitation work at 1377, and the role of Mr. Ayodeji and his workers or contractors in the work at 1377.

■■■■ Furthermore, Ms. Tolu challenges the trial court's finding that she failed to establish that appellees owed her a duty of care because she "[did] not place any of the [appellees] on the property on February 2, 2001, nor did she witness or provide any evidence of actions that could constitute negligence." Ms. Tolu contends

that appellees exercised control over construction activity on their property and had both a statutory and common law duty to avoid unreasonable risk of injury caused by that activity.[4] She maintains that appellees were negligent in failing to comply with their common law duty to avoid unreasonable risk to neighboring property and passers-by arising from their construction activity. She insists that they breached their duty by allowing construction debris from their construction activity to fall or be thrown onto her land, which caused her to fall and fracture her foot.[5] "In negligence actions the standard of care by which the defendant's conduct is measured is often stated as 'that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances.'" *Morrison v. MacNamara*, 407 A.2d 555, 560 (D.C.1979); *see also Pannu v. Jacobson*, 909 A.2d 178, 194

---

**3.** Mr. Ayodeji testified in his deposition that Mr. Rios is in Hawaii.

**4.** Appellees' contention that construction activity was occurring on Ms. Tolu's property at the time of her fall does not appear to be supported by the record; appellees solely rely on deposition testimony in which Ms. Tolu responded affirmatively when asked, "Have you had any repairs done to your house *since* the accident?" (emphasis added).

Ms. Tolu contends that appellees were negligent in failing to comply with their statutory duty to obtain a construction permit and provide notice for work on 1377. In support, she cites to a provision of the District of Columbia Building Code, 12 DCMR § 3310.1 (2001), that requires a "person intending to cause a demolition or an excavation" give written notice to the "owner of each potentially affected adjoining lot, building or structure at least one week prior to the commencement of the work" for purpose of requesting a license to enter in order to "inspect and preserve the lot, building or structure from damage." *See also* 12A DCMR § 3307A (2004). She also, without citing to a particular statute, presented evidence in the form of a sworn statement by a District of Columbia Department of Con-

sumer and Regulatory Affairs employee that he could not locate a permit for "Muriel Ayedoji of New Concepts Reality [sic] Services" for the premises located at 1377. At this point, we see no need to address this statutory issue.

**5.** "[A] landowner should be held to the duty of common prudence in maintaining his property ... in such a way as to prevent injury to his neighbor's property." *Brown v. Consolidated Rail Corp.*, 717 A.2d 309, 316 (D.C. 1998) (quoting *Dudley v. Meadowbrook, Inc.*, 166 A.2d 743, 744 (D.C.1961)). The common law duty owed in connection with the condition of land springs from *possession*, and it is "not invariably [placed] on the person in whom the land is titled." *Brown, supra*, 717 A.2d at 316 n. 9 (quoting *Husovsky v. United States*, 191 U.S.App. D.C. 242, 251, 590 F.2d 944, 953 (1978) (duty springs from possession "because the occupant or possessor has supervisory control over the activities conducted upon, and the condition of, the land.")). The duty requires a possessor of land to protect against unreasonable risk of harm to passers-by on adjacent land arising from natural or unnatural conditions on his land. *Brown, supra*, 717 A.2d at 316.

(D.C.2006) (this jurisdiction does not recognize varying standards of care ... depending upon the relationship of the parties ... but always requires reasonable care to be exercised under all the circumstances).[6]

The trial court apparently misapprehended the record at the time of summary judgment and concluded that Ms. Tolu failed to establish that appellees owed her a duty of care because she "[did] not place any of the [appellees] on the property on February 2, 2001, nor did she witness or provide any evidence of actions that could constitute negligence." Yet, Ms. Tolu stated in her deposition that appellees were engaged in construction activity, that she had previously complained to appellees' workers about throwing debris into her yard, and that debris from their activity appeared in her yard one evening, while appellees' workers were present. She also maintained that Mr. Rios was with her at the time she fell over the debris and he was later hired by appellees; that three to five "contractors" or "workmen" who were on the premises at 1377 came to the fence while she was on the ground. And the depositions of Mr. and Mrs. Ayodeji revealed that Mr. Ayodeji had a role in work at 1377, as well as Mr. Rios.

Viewing the complaint and the depositions in the light most favorable to Ms. Tolu, see Murphy, supra, 924 A.2d at 991,

we are satisfied that Ms. Tolu has established that she is entitled to place before a jury or trial judge her claim that appellees had the duty to exercise reasonable care to avoid reasonably foreseeable harm to a neighbor such as appellant, and that they breached that duty when their employees or agents caused to be present on Ms. Tolu's property construction debris from the work at 1377 which placed appellant in danger of tripping and injuring herself. See generally Pannu, supra, 909 A.2d at 194; Munson v. Otis, 396 A.2d 994, 996 (D.C.1979). The evidence was more than sufficient to raise genuine issues of material fact regarding the liability of Mr. and Mrs. Ayodeji for the injury sustained by Ms. Tolu.[7] See Weakley, supra, 871 A.2d at 1173.

Accordingly, for the foregoing reasons, the trial court should have denied appellees' motion for summary judgment. Therefore, we reverse the trial court's judgment and remand this case for further proceedings.

*So ordered.*

---

6. "Questions of causation are ordinarily issues of fact for the jury." *Thompson v. Shoe World, Inc.,* 569 A.2d 187, 190 (D.C.1990) (citing *Wagshal v. District of Columbia,* 216 A.2d 172 (D.C.1966)). *Compare Twyman v. Johnson,* 655 A.2d 850, 852–53 (D.C.1995) (jury could not reasonably find proximate cause where plaintiff could not describe reason she fell on stairs), *with Washington v. District of Columbia,* 429 A.2d 1362, 1369 (D.C.1981) (en banc), (jury could reasonably find proximate cause where plaintiff testified that she fell when she grabbed for nonexistent handrail), *and Rich v. District of Columbia,* 410 A.2d 528, 533 (D.C.1979) (jury could rea-

sonably find proximate cause where plaintiff was able to describe the defect in the pavement in which she stepped). In addition, "[i]f the case turns on controverted facts and the credibility of witnesses, the case is properly for the jury." *In re Estate of Walker,* 890 A.2d 216, 221–22 (D.C.2006) (quoting *National R.R. Passenger, supra,* 804 A.2d at 280 (citations omitted)).

7. The record before us is insufficient to make any determination as to the corporate defendant, New Concept.